IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STANTON SILLAS,** <br> **#N96336,** <br><br>                **Plaintiff,** <br><br> v. <br><br> **DR. MEYER,** <br> **DR. DAVID,** <br> **JOHN BARWICK,** <br> **R. HARP,** <br> **LESLEY KLUGE,** <br> **TAMMY STEVENS,** <br> **KELLY RISON,** <br> **JANE DOE 1,** <br> **JANE DOE 2,** <br> **WEXFORD HEALTH SOURCES INC,** <br> **and** <br> **ILLINOIS DEPARTMENT OF CORRECTIONS,** <br><br>                **Defendants.** | Case No. 24-cv-00284-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

       Plaintiff Stanton Sillas, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Vienna Correctional Center (Vienna), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816,

821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that on March 20, 2023, after showering, taking clothes to the laundry, and returning to collect his shower items, he slipped in a puddle of water while exiting the shower. (Doc. 1, p. 4). Plaintiff alleges that this area of the facility is unsafe because there are no safety mats or non-slip strips in the showers or in the walkway next to the showers. There is also no type of barrier – shower curtain, glass, or enclosure – to keep water from splashing and pooling in the walkway area. (*Id.*). When Plaintiff fell, he severely damaged his left knee and was taken to Heartland Medical Center. (*Id.* at p. 5). Plaintiff returned to Heartland Medical Center three days later on March 23 for surgery. He claims that his surgery was then delayed a week due to the medical and furlough process at Viena. (*Id.*).

Following surgery, Plaintiff was housed in the health care unit during his recovery, where he did not receive adequate care. (Doc. 1, p. 7). On May 18, 2023, Plaintiff was supposed to go to an orthopedic doctor for an examination of his left knee but instead was seen by a foot doctor in Herrin, Illinois. (*Id.* at 6). The foot doctor told Plaintiff that he needed to return for further therapy for his foot. About a week later, on May 26, Plaintiff had an appointment with an orthopedic doctor. The doctor told Plaintiff that he would need two to three physical therapy sessions per week for approximately three months. Plaintiff was to return to the orthopedic doctor for a follow-up appointment in four to six weeks. When Plaintiff returned to the facility from the appointment with the orthopedist, he had an appointment with Dr. David. Dr. David told Plaintiff that he would receive a single appointment with a physical therapist and then Plaintiff would be responsible for doing "self-therapy." Plaintiff states that he is not a physical therapist and has no idea what "self-therapy" means or the proper way of administering this alleged therapy. (*Id.*).

Plaintiff did not have an appointment with a physical therapist until June 16, 2023. (Doc. 1, p. 6). The physical therapist told Plaintiff that he should return for more intense exercises after his next visit to the orthopedist. Plaintiff had his next appointment with the orthopedist on July 7, 2023. When he returned from the appointment, Dr. David told him that he would not be allowed to "go back out for physical therapy." Plaintiff asserts that Dr. Meyer, Dr. David, Health Care Unit Administrator (HCUA) Stevens, and Director of Nursing (DON) Kluge did not schedule any follow-up therapy session, as recommended by the specialists. (*Id.*). As a result, Plaintiff was forced to self-rehab, as is the custom and practice of Wexford Health Sources, Inc. (Wexford). (*Id.* at p. 7). Plaintiff was not offered any help by medical staff in performing the exercises, and he was forced to seek assistance from other inmates housed in the health care unit. Plaintiff did not receive his leg weights, needed for rehab, until October 24, 2023. (*Id.*). His knee brace was also delayed. (*Id.* at p. 8).

In addition to not receiving physical therapy, Plaintiff complains of overall lack of care while in the health care unit. (Doc. 1, p. 7). He requested an ADA helper from Kluge on several occasions, and his requests were denied. He sought help with his wheelchair and performing other tasks from Nurse Rison, and she would not assist him. (*Id.*). Medical staff, including Dr. David, Dr. Meyer, DON Kluge, and HCUA Stevens, did not perform complete physical examinations on his knee within the critical periods of care. (*Id.* at p. 9).

Plaintiff was released by the health care unit on November 22, 2023. (Doc. 1, p. 7). Plaintiff asserts that the mishandling of his medical care by Dr. Meyer and Dr. David and the delay and denial of care as a result of Wexford policies has resulted in permanent injury to his knee. (*Id.* at p. 7-8). His still experiences pain, and his knee is stiff and does not bend properly. (*Id.* at p. 8).

**PRELIMINARY DISMISSAL**

The Court dismisses all claims brought against the Illinois Department of Corrections. IDOC is not a "person" subject to suit for money damages under Section 1983. *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012). Neither can a state agency be sued for prospective injunctive relief in federal court. *See Quick v. Ill. Dep't of Fin. & Prof'l Regulation*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. June 23, 2020) (collecting cases).

The Court also dismisses Plaintiff's claim against Wexford, Meyer, David, Stevens, Kluge, Rison, Jane Doe 1, Jane Doe 2, and Barwick for failing to properly instruct and supervise employees, resulting in an Eighth Amendment violation. (Doc. 1, p. 11). This allegation is conclusory, and there are not facts alleged in the Complaint to allow the Court to plausibly infer that Plaintiff's denial or delay in medical care was due to a lack of instruction, training, or supervision. *Ray v. City of Chi.*, 629 F.3d 660, 662 (7th Cir. 2011) ("[W]e need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (internal citations omitted).

The Court also dismisses Plaintiff's indemnification claim brought under Illinois State Law, 745 ILCS 10/2-302. This statute allows for a local entity to appear and defend on behalf of an employee of a local public entity. *See Ellis v. City of Calumet City,* No. C 7238, 2011 WL 4382452, at *4 (N.D. Ill. Sept. 15, 2011). It does not create a private cause of action to sue the employers of state employees.

Finally, to the extent Plaintiff is bringing substantive due process claims under the Fourteenth Amendment for the denial or delay of medical care, the Court will examine such claims under the Eighth Amendment only. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (where a claim is covered by a more specific constitutional provision, such as the Eighth Amendment, the

Supreme Court has held that the claim must be analyzed under the standard appropriate to that specific provision instead of substantive due process). The substantive due process claims under the Fourteenth Amendment are dismissed.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Barwick and Harp for failing to maintain safe conditions in the shower area and for failing to protect Plaintiff from dangerous conditions.

**Count 2:** Eighth Amendment claim against Wexford, Meyer, David, Stevens, Kluge, Rison, Jane Doe 1, Jane Doe 2 and Barwick for deliberate indifference to Plaintiff's knee injury.

**Count 3:** Eighth Amendment claim against Wexford, Meyer, David, Stevens, Kluge, Rison, Jane Doe 1, Jane Doe 2, and Barwick for failing to intervene and protect Plaintiff's constitutional right to be free from cruel and unusual punishment.

**Count 4:** State law intentional infliction of emotional distress claim against Meyer, David, Stevens, Kluge, Rison, Jane Doe 1, and Jane Doe 2, and Barwick.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

To prevail on an Eighth Amendment claim based on constitutionally inadequate prison conditions, the prisoner must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

civilized measure of life's necessities," and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

Here, Plaintiff claims that Warden Barwick and Chief Engineer Harp failed to protect him from dangerous conditions of confinement by not implementing "any kind of water retention safety devices," such as drainage system, higher retention walls, safety mats, non-strip slips, or shower curtains, in the shower areas of the cell houses. (Doc. 1, p. 10). Plaintiff asserts that this failure amounts to negligence and deliberate indifference to his safety, health, and welfare. (*Id.*).

These claims are not sufficient to state a viable constitutional claim, as the "hazard about which [Plaintiff] complains is not sufficiently serious to invoke the Eight Amendment." *Pyles v. Fahim,* 771 F. 3d 403, 410 (7th Cir. 2014). "Federal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Id. See also Clark v. Neal,* No. 23-cv-648-RLM-JPK, 2023 WL 5015311, at *2 (N.D. Ind. Aug. 7, 2023) (citing *Perkins v. Atrisco,* No. 3:22-CV-1052-DRL-JEM, 2023 WL 2346275, at *2 (N.D. Ind. Mar. 2, 2023)); *Cross v. Indiana Dep't of Corr.*, No. 19-cv-486-DRL-MGG, 2020 WL 1929119, at *2 (N.D. Ind. Apr. 21, 2020) (inmate who slipped on icy sidewalk did not state Eighth Amendment claim). This is because "[f]ailing to provide a maximally

safe environment" does not amount to an Eighth Amendment violation. *Clark v. Neal,* 2023 WL 5015311, at *2 (quoting *Carroll v. DeTella,* 255 F. 3d 470, 472 (7th Cir. 2001)). At most, Plaintiff's assertions, as pled, suggest "negligence in the maintenance of the prison, not conduct 'akin to criminal recklessness.'" *Id.* (internal citations omitted). Accordingly, Plaintiff's claims that his Eighth Amendment right to be free of cruel and unusual punishment was violated due to poor maintenance of the shower area and due to Barwick and Harp's failure to protect him from dangerous living conditions are dismissed. The Court will not exercise supplemental jurisdiction over any related state law negligence claims or the intentional infliction of emotional distress claim assert against Barwick and Harp, and these state law claims are also dismissed.. (*See* Doc. 1, p. 14).

**Count 2**

Prison officials may be liable for an Eighth Amendment violation if they are "deliberately indifferent to prisoners' serious medical needs." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, *Edwards v. Snyder,* 478 F.3d 827, 831 (7th Cir. 2007), acts in a manner contrary to the recommendation of specialists, *Arnett*, 658 F.3d at 753, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2019) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). As with all Eighth Amendment claims, to rise to the level of deliberate indifference, the conduct must be akin to criminal recklessness. *Klebanowski v. Sheahan,* 540 F. 3d 633, 639-40 (7th Cir. 2008). Conduct that is negligent or even grossly negligent does not violate the Eighth Amendment. *See Figgs v. Dawson,* 829 F. 3d 895, 903 (7th Cir. 2016).

### A. Denial of Proper Physical Therapy

Plaintiff asserts that the orthopedic doctor determined that Plaintiff would need two to three physical therapy sessions per week for approximately three months, a foot doctor stated that Plaintiff would need physical therapy for his foot, and the physical therapist recommended that Plaintiff return after his next orthopedic appointment for more intense exercises and that Plaintiff would need weights to properly rehab his knee. (*Id.* at p. 6, 7). Dr. David and Dr. Meyer, however, acted with deliberate indifference by refusing to refer Plaintiff to off-site physical therapy or to a physical therapist at the facility for regular sessions and requiring him to do self-rehabilitation on his own without any assistance by staff. (*Id.* at p. 6, 12). Plaintiff had an argument with Dr. Meyer, Health Care Unit Administrator Stevens, and Director of Nursing Kluge over his ability to be treated by a physical therapist, but his requests were still denied. (*Id.* at p. 6). Plaintiff argues that self-rehab was an insufficient substitution for sessions with a trained professional. Many of the exercises he could not do on his own, the medical staff would not assist him, and the leg weights were not received until October 24, 2023, a month before he was released from the health care unit. (*Id.* at p. 7). Because Plaintiff was unable to properly rehabilitate his injury post-surgery, his knee pain has been prolonged, his knee did not properly heal, and he suffers from a permanent disability. (*Id.* at p. 7, 13). These allegations are sufficient for Count 2 to proceed against Dr. Meyer, Dr. David, Stevens, and Kluge.

The Court dismisses Count 2, as pled against Warden Barwick. Plaintiff states that he filed a grievance regarding his inadequate medical care and that the grievance staff called the matter "to the attention of those individuals responsible for the matter that the grievance concern[ed]." (Doc. 1, p. 8). He also alleges that "each Defendant was aware or informed of his condition and serious medical needs." (*Id.*). This is not sufficient to state a claim. Other than generalized statements

throughout the Complaint that Barwick violated his constitutional rights, Plaintiff does not plead any facts regarding Barwick's actual involvement in his medical care. Barwick cannot be held liable solely because he is in a supervisory position or because he reviewed a grievance. *See Brown v. Randle,* 847 F. 3d 861, 865 (7th Cir. 2017); *George v. Smith,* 507 F. 3d 605, 609 (7th Cir. 2007). Accordingly, Count 2 is dismissed as to Barwick.

Plaintiff asserts that his medical providers at Vienna did not follow the recommendations of the orthopedic doctor and the foot doctor regarding physical therapy because the medical providers were following a Wexford practice and/or policy of not referring inmates for special therapy treatments implemented for the purposes of saving money. (Doc. 1, p. 6, 8). This is sufficient for Count 2 to proceed against Wexford.

The Court, however, dismisses claims against Wexford regarding their orthopedic surgery policy. (Doc. 1, p. 7). Plaintiff states that the policy provides for a "referral after six weeks for an acute injury…[and] the same policy requires a referral after six months." He asserts that these policies resulted in a delay of ordering weights for his physical therapy, a knee brace, scheduling outside specialist visits, and physical therapy referrals. The dates of Plaintiff's outside visits do not match up with this schedule. He was seen at the hospital the same day as his injury on March 20, 2023, and then taken to the hospital three days later for surgery on March 23, 2023. (*Id.* at p. 5). He had surgery a week later. (*Id.*). Plaintiff saw a foot doctor on May 18 and an orthopedist May 26, 2023. (*Id.* at p. 6). He again had a follow-up with the orthopedist on July 7, 2023. Plaintiff does not articulate how this policy contributed to delays in scheduling appointments, ordering of rehabilitative devices, or referrals for physical therapy. Accordingly, he has not stated a plausible claim that the orthopedic surgery policy resulted in a constitutional violation.

Plaintiff describes Jane Doe 1 and Jane Doe 2 as nurses employed by Wexford to provide

medical care to inmates at Vienna. (Doc. 1, p. 3). But in the statement of claim, he does not describe any of their conduct that would amount to a constitutional violation. Plaintiff's claims against the Jane Does are merely conclusory. (*See* Doc. 1, p. 5, 7). *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (a pleading requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Accordingly, Count 2 is dismissed as to Jane Doe 1 and Jane Doe 2.

### B. Denial of an ADA Attendant

Plaintiff claims that the Director of Nursing, Kluge, and Nurse Rison refused to provide him with an ADA worker, and this denial amounted to cruel and unusual punishment. (Doc. 1, p. 7, 12). Count 2 is dismissed as to Kluge and Rison. While having an ADA worker would have been convenient and helpful, Plaintiff has not provided facts from which the Court can plausibly infer that by not being provided an ADA worker Kluge and Rison disregarded a serious risk of harm to Plaintiff's health. Thus, the allegations, as pled, do not violate the Eighth Amendment.

### C. Continuation of Ineffective Treatment

Plaintiff asserts that Dr. David, Dr. Meyer, Klug, Stevens, Jane Doe 1, Jane Doe 2, and Rison caused unreasonable "delays in treatment for [his] left knee injury by the continuing of conservative care regimen and persisting in a course of treatment known to be ineffective." (Doc. 1, p. 12-13). He also states that Dr. David, Dr. Meyer, Kluge, and Stevens delayed necessary treatment "by continuing a conservative care regimen because they failed to perform complete examination[s] within the critical periods of care." (*Id.* at p. 9). Other than not being provided physical therapy sessions with a trained physical therapist, Plaintiff does not describe any other forms of "conservative care" or what treatment he believes he should have been receiving if complete examinations had been conducted. Accordingly, this general and vague claim against Defendants that they persisted in a course of conservative treatment known to be ineffective is

dismissed.

### Count 3

The Court construes Plaintiff's "failure to protect claim" and as a claim for "failure to intervene." An allegation of failure to intervene is an alternative theory of liability that requires the plaintiff to plead that "(i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result." *Watkins v. Ghosh,* No. 11 C 1880, 2014 WL 840949, at *3 (N.D. Ill. Mar. 4, 2014) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994)).

Plaintiff alleges that Dr. Meyer, Dr. David, Barwick, Kluge, Stevens, Rison, Jane Doe 1, Jane Doe 2, and Wexford failed to prevent the constitutional harm against him from occurring. (Doc. 1, p. 14). Plaintiff has sufficiently pled facts from which the Court can plausibly infer that Dr. Meyers, Dr. David, Kluge, and Stevens were all aware that Plaintiff was not being provided adequate medical care in the form of physical therapy but failed to take action to ensure that Plaintiff properly rehabbed following his surgery and that they were acting pursuant to a Wexford policy in doing so. Whether the Defendants were bystanders or the ones directing Plaintiff's care is to be determined at summary judgment. Accordingly, Count 3 will proceed against Dr. Meyers, Dr. David, Kluge, Stevens, and Wexford.

Count 3 is dismissed as to Barwick, Rison, Jane Doe 1, and Jane Doe 2. There are no allegations describing their involvement in Plaintiff's medical care concerning the denial of physical therapy. And as stated above, Plaintiff has failed to state an Eighth Amendment claim regarding denial of an ADA attendant and the allegation that an ineffective conservative course of treatment was pursued by medical staff; thus, there can be no failure to intervene regarding these

allegations. *See Harper v. Albert,* 400 F. 3d 1052, 1064 (7 Cir. 2005) ("[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation").

### Count 4

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that (1) the defendant "engaged in extreme and outrageous conduct;" 2) the defendant either intended to inflict severe emotional distress "or knew there was a high probability that [his] conduct would cause severe emotional distress;" and 3) the defendant's "conduct in fact caused severe emotional distress." *McGreal v. Vill. Orland Park*, 850 F.3d 308, 315 (7th Cir. 2017) (internal quotations omitted).

Plaintiff repleads the elements of this theory of liability stating that the conduct of Defendants as alleged was extreme and outrageous and that Defendants intended to cause or acted with knowledge of the high probability that the conduct would cause distress. (Doc. 1, p. 14).

The Court disagrees, the conduct as alleged, opting to have a plaintiff who is incarcerated to self-rehabilitate, is not truly extreme and outrageous, and there is nothing from which the Court can infer that Defendants acted with intent or knowledge that their conduct would result in severe emotional distress. Accordingly, Count 4 is dismissed.

### INJUNCTION RELIEF[2]

Plaintiff brings his claims against Defendants in their official and individual capacities. (Doc. 1, p. 2-3). To the extent that Plaintiff is seeking injunctive relief, the current warden of Vienna is the most appropriate official capacity defendant. *See generally Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the

---

[2] The request for a preliminary injunction was previously denied. (Doc. 7).

government official responsible for ensuring any injunctive relief is carried out). Allowing Plaintiff to proceed with an official capacity claim against the remaining Defendants Wexford, Meyer, David, Stevens, and Kluge would be redundant. Therefore, the official capacity claims against these Defendants will be dismissed with prejudice. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state officials named in their official capacities may not be sued for monetary damages). The Clerk of Court is **DIRECTED** to add Warden Darron Hyte, the current warden of Vienna, as a defendant in his official capacity.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 10), which is **DENIED**.[3] Plaintiff discloses three unsuccessful efforts to contact attorneys via written correspondence. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Plaintiff does explain why he believes he is unable to litigate this case. Thus, the Court finds that Plaintiff can proceed *pro se*, at least for now. Plaintiff has a high school education, and his pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Plaintiff appears competent to try this matter without representation at this time. Once discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **4** are dismissed without prejudice. **COUNTS 2** and **3** will proceed against Wexford, Meyer, David, Stevens, and Kluge in their individual capacities only. Plaintiff will proceed with his request for injunctive relief against Warden Hyte. The Clerk of Court is

---

[3] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

**DIRECTED** to **ADD** Warden Darron Hyte as a defendant in his official capacity only. All claims against the Illinois Department of Corrections, Barwick, Harp, Rison, Jane Doe 1 and Jane Doe 2 are dismissed. The Clerk of Court is **DIRECTED** to **TERMINATE** them as defendants on the docket.

Because Plaintiff's claims involve physical injury and his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Wexford, Meyer, David, Stevens, Kluge, and Hyte (official capacity only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint (Doc. 2) and this Memorandum and Order to each Defendant's place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint

in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 24, 2024**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**